FILED IN CHAMBERS
U.S.D.C. Rome

SEP 13 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID LEE COUCH,

      Plaintiff,

    v.

RAYMOND WEXLER, MD, NORMAN
FITZ-HENLEY, MD., RAYMOND
LEWIS, MD., MIKE PATTERSON,
R.N., VERNA RODRIGUEZ, R.N.,
CONNIE HODGES, R.N., KATHY
SMITH, R.N., TANYA
ELLENBERGER, R.N. RATCHEL
HATCH, R.N., KAY BUFFINGTON,
R.N., and PAUL BALLENGER,
P.A.,

      Defendants.

CIVIL ACTION

NO. 1:06-CV-1998-RLV

O R D E R

This action was originally filed in the State Court of Fulton County, Georgia, but was subsequently removed to this court. Previously, this matter came before the court in a different case, Couch v. Georgia Department of Corrections, No. 4:05-CV-286-RLV, which was based on the same incident but alleged claims under 42 U.S.C § 1983 and other state law claims against different defendants, namely the Department of Corrections and the prison warden. In this action, the plaintiff is suing three doctors and a prison healthcare administrator for negligence and violation of the plaintiff's Eighth Amendment right to adequate medical care for

injuries the plaintiff sustained while a Georgia state prisoner working as part of an inmate work crew.[1]  Pending before the court are two motions for summary judgment.  The first is a Motion for Summary Judgment by defendants Wexler and Fitz-Henley [Doc. No. 25] ("the Wexler and Fitz-Henley motion"), and second is a Motion for Summary Judgment by defendants Lewis and Patterson [Doc. No. 29] ("the Lewis and Patterson motion").[2]  For the following reasons, the defendants' motions for summary judgment on the Eighth Amendment claim is GRANTED, and the case is REMANDED to state court.

---

[1]Pursuant to a joint stipulation of dismissal [Doc. No. 23], the only defendants remaining in this case are Raymond Wexler, M.D., Norman Fitz-Henley, M.D., Raymond Lewis, M.D., and Mike Paterson, R.N.

[2]Defendants Lewis and Patterson also style their motion as a motion to dismiss the negligence claim, which is apparently an attempt to provide a framework for their argument that as state employees they enjoy official immunity, pursuant to the Georgia Tort Claims Act, from tort claims based on their conduct while acting within the scope of their official duties.  This court need not address that issue, however, because the plaintiff has announced that he is not asserting his negligence claim against Lewis and Patterson (only against Wexler and Fitz-Henley). Consequently, this court will treat the Lewis and Patterson motion as simply a motion for summary judgment on the Eighth Amendment claim.

**Factual Background**

On July 9, 2004, while incarcerated at Walker State Prison, the plaintiff was part of an inmate work crew assigned to paint the interior of the warden's residence.  A separate work crew had been assigned to repair the kitchen floor.  When the plaintiff arrived at the residence, the kitchen floor and parts of the subflooring had already been cut out, exposing the kitchen floor joists.  While the floor joists were being repaired on the first floor, the plaintiff began his painting detail on the second floor of the house.

Throughout the morning, the plaintiff made repeated trips from the upstairs area to the garage via the kitchen to obtain supplies. On each trip the plaintiff walked through the kitchen area across the exposed floor joists.  The plaintiff contends that a guard informed him it was safe to walk across the joists. On his last trip, the plaintiff stepped on a rotted portion of a floor joist, which gave way, causing the plaintiff to fall and land on his groin straddling the exposed joist.  As a result of the fall, the plaintiff suffered bruising and was ultimately diagnosed with a severed urethra.

Immediately following the fall, the prison staff transported the plaintiff back to Walker prison, where he was eventually

3

examined by the prison doctor, who directed that the plaintiff be transported to Redmond Medical Center in Rome, Georgia, for additional treatment. While he was at Redmond, the examining physician diagnosed a severed urethra and installed an abdominal catheter because the injury prevented the plaintiff from urinating normally.

Following his release from Redmond on July 10, 2004, the plaintiff was transported to the prison infirmary at Hays State Prison, where he remained for approximately the next three months until his release on October 7, 2004. Although he generally alleges that the level of medical care at the infirmary was at all times inadequate, the plaintiff was nevertheless seen by a doctor at least once a week, and he was provided with prescription pain medication for the duration of his stay and for thirty days after his release. The primary care physicians on staff at the infirmary were Dr. Raymond Wexler and Dr. Norman Fitz-Henley, both of whom are licensed and board certified in internal medicine.

After a few weeks in the infirmary, the plaintiff was transported back to Redmond on August 2, 2004, where the examining physician recommended that the plaintiff be seen by a urology specialist for reconstructive surgery to repair and reconnect his severed urethra. Based on that recommendation, the plaintiff's

4

primary care physician at Hays State Prison, Dr. Fitz-Henley, requested a urology specialist consult at the state medical prison. Although Dr. Fitz-Henley and Dr. Wexler were the plaintiff's primary care physicians,[3] they were not urological specialists and could not perform the plaintiff's reconstructive surgery.

Just over a week later, on August 10, 2004, the plaintiff was transported to the Augusta State Medical Prison for an examination by a urologist at the Medical College of Georgia, which is the medical care provider for the Georgia Department of Corrections. At that visit, the plaintiff's catheter was replaced and Dr. Lewis, the Chief of Urology at the Medical College of Georgia, recommended a urethrogram to assess the plaintiff's physical injuries before any reconstructive surgery could be performed. Based on Dr. Lewis' recommendation, Dr. Fitz-Henley requested a urethrogram be scheduled for the plaintiff. About three weeks later, on August 31, 2004, the plaintiff was transported back to Augusta for the urethrogram procedure, and his catheter was again replaced.

After another two weeks, on September 14, 2004, Dr. Lewis determined that the urethrogram test was inconclusive because the

_____

[3]The facts bear out that Dr. Wexler's role in this matter, although similar to Dr. Fitz-Henley's, was somewhat limited as he was employed by Hays State Prison for little over a month during the plaintiff's approximately three-month stay at the infirmary.

plaintiff's urethra had been completely severed.   Therefore, Dr. Lewis recommended a cystoscopy, an invasive diagnostic procedure, be performed before proceeding with reconstructive surgery, which Dr. Fitz-Henley later formally requested on the plaintiff's behalf. Also during that visit with Dr. Lewis, the plaintiff signed consent forms for the upcoming cystoscopy operation.   However, on September 19, five days after giving his consent, the plaintiff sent a letter referencing the September 14 meeting with Dr. Lewis and requested copies of the consent forms so they could be reviewed by his attorney because the plaintiff had been too ill at the time to understand the forms that he had signed.

Although the plaintiff alleges that at all times he intended to proceed as soon as possible, it is nevertheless undisputed that the Medical Director for Georgia Correctional Health Care, Dr. Edward Bailey, interpreted the plaintiff's letter to mean that he did not consent and wanted to delay any procedure or operation. Dr. Bailey then requested that the plaintiff's primary care physician at Hays State Prison, Dr. Fitz-Henley, go over the consent forms again with the plaintiff and obtain his consent.

After about a week, on September 28, 2004, Dr. Bailey received word from an administrator at Hays that the plaintiff wished to proceed with the surgery.   However, because at that point the

6

plaintiff was due to be released from prison just over a week later, Dr. Bailey concluded that there would not be enough time to perform the prerequisite cystoscopy and the reconstructive operation before the plaintiff's release date.

The Health Services Director at Hays State Prison, Mike Patterson, met with the plaintiff to discuss the options for continuing treatment with a urologist after he was released. According to the plaintiff, Patterson promised the state would pay for his reconstructive surgery at either the Medical College of Georgia or a hospital near where the plaintiff chose to live. The plaintiff declined treatment at the Medical College of Georgia because he had no means of transportation to Augusta. Later, the plaintiff attempted to schedule treatment at a hospital in Marietta, but was unsuccessful because the state would not provide a guarantee of payment. Consequently, the plaintiff never received any surgical treatment for his injuries until nearly a year after being released from prison when he was able to procure medical treatment on his own.

## Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

7

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).   The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her claim on which he or she bears the ultimate burden of proof.   <u>Id.</u> at 322-23.   In order to determine whether a factual issue exists, a court must view the evidence in the light most favorable to the non-moving party.   <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989).   Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex Corp.</u>, 477 U.S. at 324.   Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id.</u> at 322.

The court first addresses whether summary judgment is warranted with respect to the plaintiff's §1983 claim for violation

8

of his Eighth Amendment right to adequate medical care while in prison and afterward.

### §1983 Claim

The plaintiff asserts that his primary care physicians, Dr. Wexler and Dr. Fitz-Henley, along with his urologist, Dr. Lewis, and the prison's healthcare coordinator, Mr. Patterson, all violated their duties under the Eighth Amendment to provide adequate medical treatment first by not ensuring that he received reconstructive surgery before his release date and second by not following up afterwards and making arrangements for post-release surgery. In response, the defendants contend that their individual responsibilities were satisfied and that the plaintiff's level of care was not constitutionally inadequate.

Providing minimally adequate medical care to prisoners does not violate the Eighth Amendment. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). To successfully allege a lack of adequate medical care an inmate must show that a prison official acted with "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976). To make such a showing and establish a constitutional violation, "a plaintiff must satisfy both an objective and subjective inquiry." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). First, the

9

plaintiff must show an objectively "serious medical need." Second, the plaintiff must show that the prison official subjectively acted with "deliberate indifference" to that serious medical need.

In this case, the defendants admit that the plaintiff had a serious medical need and thus the first prong of his §1983 claim has been met. With respect to the second prong, however, the defendants dispute whether their actions were deliberately indifferent to the plaintiff's serious medical need.

A "deliberate indifference" to a serious medical need "has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow, 320 F.3d at 1245. (internal quotations and citations omitted). The first component is met in this instance because the undisputed facts in this case show that the defendants were subjectively aware of the plaintiff's condition and that the condition was serious. Determining whether the second component is met, however, merits discussion because the plaintiff's allegations focus on that part of the "deliberate indifference" inquiry. Couch asserts that the defendants did not satisfy their duty to provide adequate medical care under the

Eighth Amendment because their actions amounted to a "disregard of the risk" of serious harm to his serious medical need.

The second component of the "deliberate indifference" inquiry, the "disregard of the risk" component, examines the defendants' actions in response to a serious harm.  That response, in order to violate the Eighth Amendment, must constitute an "objectively insufficient response." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).  This means that as long as a prison official acts reasonably in response to a known risk, there is no Eighth Amendment violation.  Farmer v. Brennan , 114 S.Ct. 1970, 1983 (1994).  Thus, the issue before the court is whether the plaintiff has pointed to sufficient evidence that could reasonably support a jury finding that the defendants' individual responses to the plaintiff's condition disregarded the risk of serious harm.

A prison official may be liable under §1983 if, in response to an inmate's serious medical need, he fails or refuses to obtain medical treatment for the inmate, or if he unnecessarily delays treatment.  Farrow, 320 F.3d at 1246.  Notably in this case, as this court pointed out in Couch's previous §1983 action, the only substantive complaint about the medical treatment Couch received is not so much about the level of care provided while in prison but

11

that it did not progress quickly enough to ensure he received his surgery before being released from prison.

For example, with respect to Couch's primary care physicians, the plaintiff asserts that because they admittedly knew the seriousness of his injury and that reconstructive surgery was the medically appropriate course of treatment, Wexler and Fitz-Henley had a duty to ensure that treatment was completed.  The plaintiff contends that the defendants' failure to ensure that he had his surgery before being released from prison amounted to a "disregard of the risk" of harm to his serious medical need in violation of his Eighth Amendment right to adequate medical care.  [Pl.'s Resp. to Mot. for Summ. J., 17-18, Doc. No. 34.]  Specifically, the plaintiff states, "The Defendants have failed to treat Couch on time thus constituting a § 1983 violation."  Id. at 17.

However, the plaintiff has not pointed to any evidence that, when viewed in his favor, would show either Dr. Wexler or Dr. Fitz-Henley's actions amounted to a "disregard of the risk" posed by the plaintiff's condition.  There is no evidence that would reasonably show how the medical treatment the defendants did provide was inadequate, or how they refused or failed to provide treatment, or how they unnecessarily delayed the plaintiff's care.  Consequently, this court concludes that the plaintiff has failed to make any

12

showing of evidence that could reasonably support a finding that these defendants' conduct disregarded the risk of serious harm.

The plaintiff primarily argues that the defendants' overall failure to ensure he had his surgery before being released is itself evidence that they disregarded the risk that serious harm would occur without the surgery. Again, however, the plaintiff points to nothing establishing a duty for a prison physician to ensure that an inmate's course of treatment is completed before that inmate is due to be released. While such an argument aspires to lofty humanitarian goals, it is indistinguishable from the plaintiff's allegations in his related case against the Department of Corrections and the prison warden, and it fails for the same reason. The constitution does not guarantee an inmate the best medical care; instead, medical care becomes unconstitutional only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers, v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Additionally, the plaintiff's chief complaint is the lack of expediency with which the defendants acted, not their refusal or even delay in providing care. Such a complaint, however, is more akin to a medical malpractice complaint than to a cruel and unusual punishment complaint. Estelle, 97 S.Ct. At 107. Thus, even if it

may have been preferable for Wexler and Fitz-Henley to ensure that Couch's course of treatment was concluded before his release, failure to do so does not necessarily mean that the overall level of care they provided was unconstitutional.

As for the other two defendants, Dr. Lewis and Mr. Patterson, the plaintiff makes essentially the same argument as to why their conduct was "deliberately indifferent," though there are a few substantial differences.  While the plaintiff includes Dr. Lewis' pre-release care in his general claims of inadequacy, his specific claim against Dr. Lewis concerns his duty of care after the plaintiff was released.  According to the plaintiff, Dr. Lewis's deposition testimony shows that he knew of the challenges faced by newly-released inmates requiring medical care and that he frequently offered free care to such inmates.  However, Couch alleges that because such an offer was not made to him, Dr. Lewis therefore violated his duty to provide adequate medical care. [Pl.'s Br. in Opp'n to Defs. Lewis and Patterson's Mot. for Summ. J., 8, Doc. 32.] As this court discusses below, this allegation fails because no such post-release duty of care exists.

For his part, Mr. Patterson allegedly failed to provide adequate medical care because, as the health services director, Patterson had a duty to coordinate and schedule the required

14

surgery while the plaintiff was in prison, which did not occur; thus, Patterson failed to provide adequate care to Couch while he was incarcerated. As with the claim against Dr. Lewis, the court first discusses the pre-release allegations and then addresses the contention that Patterson also had a duty to coordinate post-release care. The allegations of inadequate care while in prison against Lewis and Patterson, and to a lesser extent Wexler and Fitz-Henley, focus on their role, though limited, in the delay of Couch's cystoscopy and surgery.

Again, the plaintiff does not complain of the level of care while in prison, and he even admits that his allegations of deliberate indifference are entirely about his treatment not happening quickly enough to ensure that he had his surgery before being released. [Pl.'s Resp. to Mot. for Summ. J. 4, Doc. No. 34.] The only fact that the plaintiff points to evidencing any of the defendants' insufficient responses, and thereby their "deliberate indifference" to his serious medical need, is the delay that ensued after Dr. Bailey received the plaintiff's letter of September 19, 2004. In that letter, the plaintiff referenced his meeting with Dr. Lewis about the diagnostic cystoscopy and stated that his consent for the procedure was given under the influence of narcotic pain medication and without his full understanding. [Couch Letter,

Ex. 3 to Pl.'s Statement of Facts, Doc. No. 37-4.]   Dr. Bailey interpreted that letter as a withdrawal of consent and, accordingly, delayed the cystocscopy and subsequent surgery until the plaintiff's consent could be obtained. [Couch Letter, Ex. 3 to Pl.'s Statement of Facts, Doc. No. 37-4.]

The plaintiff asserts that despite his letter he never intended to withdraw his consent and at all times wanted his surgery to occur as soon as possible.   He argues that Patterson even knew the plaintiff never intended to refuse treatment and yet did nothing to make the plaintiff's wishes known and have his procedure immediately re-scheduled.   He further contends that his letter never expressly or impliedly stated an intent to cancel the surgery and that any response on the part of any of the defendants to that effect amounted to an unreasonable delay and a "disregard of the risk" of serious harm, and thus a "deliberate indifference" giving rise to liability under §1983.   See Farrow, 320 F.3d at 1246.

Although it is true that the plaintiff's September 19 letter did not express or imply his intent to cancel his surgery, the entire objective of the meeting with Dr. Lewis was to obtain the plaintiff's consent.   Indeed, he signed the forms and gave his consent, but then subsequently sent a letter requesting copies of

16

the forms so that his attorney might review them because he was under the influence of narcotic pain medication and did not read or understand the forms.  The question, therefore, is not whether the plaintiff actually withdrew his consent but, rather, whether these facts could reasonably support a jury finding that the defendants acted with a "deliberate indifference" in response to that letter by delaying treatment until the plaintiff's consent could be obtained.   Even viewing this evidence in favor of the plaintiff, i.e., that he did not actually withdraw his consent, this court concludes that there is insufficient evidence to permit a jury to conclude that the delay in response to the plaintiff's letter was unreasonable.   Clearly, the act of delaying the plaintiff's procedure until it could be determined that he gave his consent soberly and with his full understanding was a reasonable response. Accordingly, Couch cannot avoid summary judgment on this claim.

Additionally, the plaintiff makes no showing that would reasonably support a finding that the level of care he received amounted to "deliberate indifference" under any Eleventh Circuit case law.  The plaintiff has not shown that any of the individual defendants failed or refused to obtain treatment for the plaintiff. E.g., Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997).   Although an unreasonable delay in treatment may

constitute "deliberate indifference," <u>Harris v. Coweta County</u>, 21 F.3d 388, 393-94 (11th Cir. 1994), this court has already concluded that the delay in this case was precipitated by the plaintiff's own letter of September 19, 2004, and was not unreasonable.  Also, the plaintiff makes no showing that the defendants made a decision to render an easier but less efficacious course of treatment.  <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989).  Indeed, if that were the case, the decision might have been to leave the catheter in place, which did not occur.  Instead, the prison officials all acknowledged that the proper course of treatment, i.e., the most efficacious, and the one the plaintiff had been receiving, was to proceed towards reconstructive surgery.  It just so happened that the time required for that course of treatment was more than what the plaintiff had remaining in his prison sentence.  Thus, there is nothing before the court to reasonably support a finding that any of the defendants acted with "deliberate indifference."

Thus far this court's discussion has focused on the plaintiff's arguments about the defendants' duty to provide care while he was incarcerated, but the bulk of the plaintiff's briefs is actually dedicated to the duty to provide care *after* release. The essence of the plaintiff's argument in this regard is that "the constitutional obligation to provide medical care to inmates

extends, in certain circumstances, to inmates after they are released." [Pl.'s Resp. to Mot. for Summ. J. 7, Doc. No. 34.] However, as the plaintiff admits, there is no Eleventh Circuit case, nor any Supreme Court precedent, establishing such duty to provide medical care to an inmate *after* he is released.[4] In view

_____

[4]To support his argument the plaintiff cites Wakefield v. Thompson, 177 F.3d 1160 (9th Cir. 1999), which imposes an Eighth Amendment duty on the state to provide certain medical care to a prisoner after release. He also cites cases in the Sixth and Second Circuits that have taken a similar position, David v. Brady, 143 F.3d 1021, 1024-25 (6th Cir. 1998)(police officers who temporarily detained an individual for intoxication and then drove him to the city limits and abandoned him on the side road owed that individual a duty of care to not place him in a more dangerous situation than before their interference), and Jacobs v. Ramierez, 400 F.3d 105, 106-107 (2d Cir. 2005)(imposing a duty of care on the state concerning the selection of residence a former inmate is paroled to). Without taking a position on the matter, the court notes that the rationale and holding of these cases do not extend to the particular facts of this case. In those situations addressed by the Ninth Circuit in Wakefield, as well as the Second and Sixth Circuits, the duty to provide care arises from the state's restriction on a person's liberty to obtain care on his own behalf. It does not arise, in a constitutional sense, from the fact that a person was injured while incarcerated. Accordingly, to the extent that incarceration (or the period following it) does not restrict a person's liberty, then the constitutional duty to provide care under the Eighth Amendment diminishes. In Wakefield, the Ninth Circuit was concerned with the period immediately following an inmate's release--the "transitional period"--during which an inmate may not, because of his recent restriction on liberty, instantly acquire the ability to obtain medical care on his own upon release. The court specifically held that "[a] state's failure to provide medication sufficient to cover this transitional period amounts to an abdication of its responsibility to provide medical care to those, who by reason of their incarceration, are unable to provide for their own medical needs."

of that fact, this court will not *sua sponte* create such a duty here.   In the absence of an obligation to continue an inmate's course of treatment after his release from prison, it cannot be said that any of the defendants' failure to ensure the plaintiff obtained his reconstructive surgery after his release was a constitutional violation.

Lastly, plaintiff argues that, if nothing else, Mr. Patterson assumed a duty to provide care after release because he had a duty to coordinate ongoing medical care for outgoing prisoners and because he, along with two non-party physicians, Dr. Baily and Dr. Paris, purportedly promised the plaintiff that the state would be responsible for the plaintiff's reconstructive surgery even after

---

Wakefield, 177 F.3d at 1164.   Such a mandate to cover this "transitional period" immediately following release, even if applicable in this circuit, would likely not extend to the plaintiff's case.   Couch was given a thirty day supply of prescription pain medication, which covered his needs during the "transitional period" addressed by Wakefield.   His argument is that he was released from prison without a job, money, or ability to procure the surgery on his own behalf.   However, his inability to procure care on his own behalf was not necessarily because of his incarceration.   Just as the Ninth Circuit held a state is required to do, Couch was provided with medication to cover the gap in time between when a prisoner is released and when he can find a doctor, obtain an diagnosis, and procure a prescription.   Even the expansive rule of Wakefield does not impose a duty to provide a former inmate surgery when the state has imposed no restriction on his ability to procure that treatment on his own behalf.   Indeed, in this instance, Couch clearly was able to do so since he eventually had the surgery, albeit a year after his release.

his release from prison.   However, the duty to provide adequate medical care pursuant to the Eighth Amendment does not arise from the knowledge of the prisoner's condition or any promises to render assistance after release.   DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 187, 200-201 (1989).   A person cannot assume a constitutional duty by virtue of promises that he has made. Thus, even if Patterson's statements could bind the state, they cannot impose a constitutional duty under the Eighth Amendment.

Therefore, this court concludes that there is no evidence, even when viewed in favor of the plaintiff, that could reasonably support a finding of constitutionally inadequate care; therefore summary judgment in favor of the defendants is warranted as to that claim.   Having eliminated the federal claim in this case, the remaining state law claim of negligence against Wexler and Fitz-Henley, is more properly addressed in state court.   See Raney v. Allsate Ins. Co. , 370 F.3d 1086, 1088-89 (11th Cir. 2004). Accordingly, this court remands this case to the State Court of Fulton County, Georgia.

**CONCLUSION**

For the foregoing reasons, the Lewis and Patterson Motion for Summary Judgment [Doc. No. 29] is GRANTED; the Wexler and Fitz-Henley Motion for Summary Judgment [Doc. No. 25] is GRANTED in

part.   The plaintiff's federal claim is dismissed and the case is REMANDED to the State Court of Fulton County, Georgia, to consider the remaining state law claim against defendants Wexler and Fitz-Henley.   The pending Motion to File Excess Pages by Lewis and Patterson [Doc. No. 27] is GRANTED.   The plaintiff's Motion for Oral Argument Regarding the Motions for Summary Judgment [Doc. No. 35] is dismissed as MOOT.


SO ORDERED, this 13th day of September, 2007.


ROBERT L. VINING, JR.
Senior United States District Judge

22